DUNAWAY, APPELLEE, *v.* DUNAWAY, APPELLANT.

[Cite as Dunaway *v.* Dunaway (1990), 53 Ohio St. 3d 227.]

(No. 89-463—Submitted May 8, 1990—Decided August 29, 1990.)

*Arnold & Christiansen Co., L.P.A.,* and *Vicky M. Christiansen,* for appellee.

*Schaller, Hostetter & Campbell, Douglas E. Sassen* and *Stephen E. Schaller,* for appellant.

MOYER, C.J. The issue presented by this appeal is whether the remarriage of one party to a divorce terminates the other party's duty to pay sustenance alimony where the divorce decree provides for the payment of sustenance alimony for an indefinite period of time. For the reasons that follow, we hold that defendant's remarriage terminated plaintiff's obligation to pay sustenance alimony after her remarriage.

At the time of the parties' divorce in 1977, *Wolfe* v. *Wolfe* (1976), 46 Ohio St. 3d 399, 75 O.O. 2d 474, 350 N.E. 2d 413, held that a trial court impliedly reserved jurisdiction to modify a sustenance alimony award in a divorce decree which had incorporated a settlement agreement executed by the parties prior to the divorce.[1]

Here, the parties executed a maintenance and support agreement which only incidentally referred to a divorce. Clearly, the primary purpose of the maintenance and support agreement, as in most cases, is the desire of the parties to agree upon support of a spouse during a period of separation when divorce is not necessarily con-

---

[1] In *McClain* v. *McClain* (1984), 15 Ohio St. 3d 289, 15 OBR 421, 473 N.E. 2d 811, this court limited *Wolfe* to divorce cases, holding that a trial court does not have jurisdiction to modify periodic sustenance alimony payments contained within a dissolution of marriage decree. See, also, *In re Adams* (1989), 45 Ohio St. 3d 219, 543 N.E. 2d 797.

templated. Under these circumstances it is not unusual that the parties would not include the conditions for termination of alimony that are usually included in a separation agreement executed in contemplation of divorce. Here, the parties did not mutually agree to incorporate the maintenance and support agreement into the divorce decree. The plaintiff actively objected to the adoption or incorporation of the agreement into a final decree both before and after the hearing was conducted. It appears that the trial court adopted the agreement, not because it was mutually agreed to prior to the filing of the divorce, but because it reflected what the trial court believed to be a fair disposition of the parties' rights and obligations arising from their marriage.

The court of appeals, although agreeing that the maintenance and support agreement was valid, held that the trial court abused its discretion in awarding alimony of indefinite duration and consequently modified the order to continue the court's jurisdiction, as permitted under *Wolfe, supra.*

In 1978, the trial court found that defendant's personal gross income was $850 per month or $10,200 per year. In response to plaintiff's interrogatories in 1988, defendant indicated that her income was $847 per month net, $16,851 gross per year.

Although defendant's salary increased from 1978 to 1988, we find no other substantial changes related to income. On these bases alone we would not disturb a trial court's decision not to terminate plaintiff's sustenance alimony obligation. See *Martin* v. *Martin* (1985), 18 Ohio St. 3d 292, 18 OBR 342, 480 N.E. 2d 1112.

However, this is not a "change of circumstances" case as that term has been applied where remarriage of a dependent spouse is not an issue.

The General Assembly has not enacted legislation which automatically terminates sustenance alimony upon the remarriage of a dependent divorced spouse.[2] In some states where there is no controlling statute, the courts have reasoned that remarriage created an inference that the ex-wife elected the support of her second husband and thereby abandoned the provision made for her support by the court in its award of alimony. *Cary* v. *Cary* (1930), 112 Conn. 256, 152 A. 302[3]; *Alsop* v. *Commr. of Internal Revenue* (C.A.3, 1937), 92 F. 2d 148; *Kuert* v. *Kuert* (1956), 60 N.M. 432, 292 P. 2d 115; *Hartigan* v. *Hartigan* (1920), 145 Minn. 27, 176 N.W. 180. The general rule has been that a spouse's remar-

---

[2] See Ala. Code, Title 30, Section 2-55 (1989); West's Ann. Cal. Code, Civil, Section 4801(b) (1990 Cum. Supp.); Del. Code Ann., Title 13, Section 1519(b) (1981 Repl.); Nev. Rev. Stat. Ann., Section 125.150.5 (1989 Cum. Supp.); McKinney's Consol. Law of N.Y., Dom. Rel. Law, Section 248 (1986).

[3] The court in *Cary* v. *Cary, supra,* at 261, 152 A. at 303, states: "Reason requires us to hold that the remarriage of the wife should relieve the husband from the obligation of supporting the wife of another man. To permit her to have alimony from the first husband as an equivalent for her support after she had secured the legal obligation from the second husband to support her would give her support from her present and her former husband, and for each subsequent divorce for the husband's fault she might again be awarded alimony for her support. The legislative intent never could have contemplated such a situation. It would offend public policy and good morals. It is so illogical and unreasonable that a court of equity should not tolerate it."

riage should cause sustenance alimony to terminate unless exceptional or extremely rare circumstances were proved to justify continued support from the former husband. See, also, *Viglione* v. *Viglione* (1976), 171 Conn. 213, 368 A. 2d 202; Annotation, Alimony as Affected by Wife's Remarriage, in Absence of Controlling Specific Statute (1956), 48 A.L.R. 2d 270, 283; 2 Clark, Law of Domestic Relations (1988) 283, Section 17.6(4).

In Ohio, the General Assembly has codified the common-law duty of a husband to support his wife in R.C. 3103.03. See, generally, *Baltimore & Ohio RR. Co.* v. *Glenn* (1902), 66 Ohio St. 395, 64 N.E. 438. The statute provides in part: "The husband must support himself, his wife, and his minor children out of his property or by his labor. * * *" In addition to the husband's duty to support, the statute also creates an obligation in the wife: "* * * If he is unable to do so, the wife must assist him so far as she is able." See, generally, *Ohio State Univ. Hosp.* v. *Kinkaid* (1990), 48 Ohio St. 3d 78, 549 N.E. 2d 516.

Pursuant to the statute, the primary responsibility to support lies with the husband. Defendant asserts that her marriage to Barnard was a matter of accommodation and economic necessity to permit her to take advantage of Barnard's medical insurance coverage and that Barnard's only source of income is payments for total disability. Barnard's annual income for 1988 was $16,596. Based on this, defendant asserts that Barnard is unable to provide financial support for her, even if he is charged with a duty to support her pursuant to R.C. 3103.03.

However, defendant herself has a duty, pursuant to that same statute, to assist her husband for support so far as she is able. See *Albert* v. *Albert* (1916), 7 Ohio App. 156, 29 Ohio C.D. 271, 28 Ohio C.C.(N.S.) 225. The policy behind terminating sustenance alimony after remarriage is that the wife has elected to be supported by a new husband. A husband may choose to remarry for the same reasons — sharing expenses.

In *Hunt* v. *Hunt* (1959), 169 Ohio St. 276, 8 O.O. 2d 286, 159 N.E. 2d 430, this court reviewed an issue similar to that presented here. The court held that the dependent spouse's remarriage terminated the first husband's obligation to pay sustenance alimony. The court stated that " ' "[a]limony" * * * is an award by the court upon considerations of equity and public policy and is founded upon the obligation, which grows out of the marriage relation, that the husband must support his wife, which obligation continues after legal separation without her fault.' " *Id*. at 281, 8 O.O. 2d at 289, 159 N.E. 2d at 434. The court essentially held that permanent sustenance alimony should be terminated upon remarriage where there was a separation agreement between the parties, unless: (1) the agreement constitutes a property settlement, (2) it is related to support of children, (3) the order contains provision for termination of the payments, and (4) there is reservation of jurisdiction by the court. If none of these elements is present, the "subsequent remarriage of such wife to another man capable of supporting her constitutes an election[,] * * * and an abandonment" of support from the divorced husband. *Hunt, supra*, at paragraph one of the syllabus.[4] The court was forced to

---

[4] In 1960, this court held in *Dailey* v. *Dailey* (1960), 171 Ohio St. 133, 12 O.O. 2d 161, 167 N.E. 2d 906, that the remarriage of the wife did not terminate annual payments ordered upon the husband because the alimony involved part of the

make this ruling because it was faced with a divorce where the parties had mutually agreed to a separation agreement and where there was no reservation of jurisdiction by the court — thus rendering the decree unmodifiable.

The *Hunt* court did not expressly adopt the rule that termination could be avoided only if the dependent spouse "proved exceptional circumstances." In *Hunt,* the new husband was capable of supporting the wife; the court's syllabus referred specifically to that fact. It appears that the second husband's ability to support the wife was not the criterion used in determining that the first husband's obligation to pay sustenance alimony should terminate, nor did it constitute the "exceptional circumstance" which the dependent spouse must prove in order to mitigate against termination.

The court carved out three circumstances which automatically mitigate against termination of sustenance alimony where the dependent spouse remarried: (1) that the sustenance alimony payment constitutes a property settlement, (2) that the payment is related to child support, or (3) that the agreement or order contains a provision for termination of the payments. Beyond that, however, we find no adoption by the *Hunt* court of any other "exceptional circumstances" to mitigate against termination of sustenance alimony once the dependent spouse has remarried. Nor do we adopt such a rule here.

It is clear to us that when parties marry they assume mutual obligations of maintenance and support. It is a conscious election to share life together, and this necessarily includes

financial circumstances. To hold a first spouse responsible for continued support of a former spouse who has remarried is tantamount to imposing a legal obligation to support another couple's marriage. We therefore hold that where a dependent divorced spouse remarries, the obligation of the first spouse to pay sustenance alimony terminates as a matter of law, unless: (1) the sustenance alimony constitutes a property settlement, (2) the payment is related to child support, or (3) the parties have executed a separation agreement in contemplation of divorce that expressly provides for the continuation of sustenance alimony after the dependent party remarries. The third exception is necessary to preserve the right of parties to contract. However, if a separation agreement is executed by the parties, but contains no provision for termination upon remarriage of the dependent spouse, the paying spouse may request termination of the obligation to pay sustenance alimony. Of course, a divorce decree resulting from a contested divorce may contain provisions for the termination of sustenance alimony upon the remarriage of the dependent spouse.

Consequently, the fact that defendant chose to marry Barnard when his sources of income consisted of approximately $830 per month in Social Security benefits and $553 per month in retirement benefits in no way diminishes the choice she voluntarily made to share her living expenses with him. While Barnard may not be wholly able to support defendant, Ohio law recognizes defendant's obligation to assist in supporting her new husband.

For these reasons, the judgment of

property settlement. Similarly, in *Ginsburg* v. *Ginsburg* (Oct. 29, 1981), Franklin App. No. 81AP-500, unreported, the court did not terminate the ex-husband's obligation to pay sustenance alimony upon the wife's

remarriage because the payments were in the nature of property settlement. In such instances, the alimony is not modifiable. See *Stevens* v. *Stevens* (1986), 23 Ohio St. 3d 115, 118, 492 N.E. 2d 131, 134.

the court of appeals is affirmed, and the cause is remanded. We note that plaintiff was found in contempt for failing to pay alimony after June 1977. He is still bound to pay any arrearages to the date of defendant's remarriage on September 4, 1987.

*Judgment affirmed and cause remanded.*

HOLMES, WRIGHT, H. BROWN and RESNICK, JJ., concur.

SWEENEY and DOUGLAS, JJ., separately dissent.

DOUGLAS, J., dissenting. I would reverse the judgment of the court of appeals and reinstate the judgment of the trial court.